IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **VICKI PIONTEK,** *individually and on behalf of all others similarly situated* | * |
| Plaintiffs | * |
| v. | * Civil No. PJM 10-1202 |
| **SERVICE CENTERS CORP.** | * |
| Defendant | * |

## MEMORANDUM OPINION

In this lawsuit, Plaintiff Vicki Piontek, proceeding on behalf of herself and others similarly situated, alleges that Defendant Service Centers Corp. ("Service Centers"), an automated teller machine ("ATM") operator, charged an out-of-network ATM fee in a manner that violated the federal Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.* Piontek has filed a Motion to Strike Affirmative Defenses [Paper No. 18] and a Second Motion to Strike Affirmative Defenses [Paper No. 20], each of which asserts that several of the defenses proffered by Service Centers violate the elevated plausibility standard recently announced by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-63 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

For the following reasons, Piontek's Motion to Strike Affirmative Defenses [Paper No. 18] is **MOOT**, and her Second Motion to Strike Affirmative Defenses [Paper No. 20] is **DENIED**.

**I.**

For present purposes, the facts are taken to be as follows:

On January 9, 2010, Piontek initiated a funds withdrawal transaction at an ATM in Capitol Heights, Maryland operated by Service Centers. At the time Piontek initiated her transaction, a sign posted above the ATM presented the following warning: "FEE NOTICE: Credit Union Family Service Centers may charge a $1.50 fee to U.S. cardholders for withdrawing cash. This fee is added to the amount of your withdrawal by Credit Union Family Service Centers and is in addition to fees that may be charged by your financial institution." Piontek says that when she completed her transaction, however, the ATM actually charged her a fee of $1.75—an amount $0.25 higher than the $1.50 amount posted on the warning sign above the ATM.

In her Complaint, Piontek alleges that the discrepancy between the amount posted on Service Centers' warning sign and the amount actually charged violates the EFTA, which requires any ATM operator who imposes a fee on any consumer for providing "host transfer services" to provide notice of the fee in: "a prominent and conspicuous location on or at the [ATM] at which the electronic fund transfer is initiated by the consumer," 15 U.S.C. § 1693b(d)(3)(B)(i); *and* "on the screen of the [ATM], or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction," 15 U.S.C. § 1693b(d)(3)(B)(ii).

Service Centers asserts that, even if the warning sign above the ATM posted an inaccurate fee amount, Service Centers' conduct did not violate the EFTA because, before Piontek was "irrevocably committed to completing the transaction," an accurate warning displaying the actual fee amount of $1.75 appeared on the ATM's screen. Although Piontek fails to mention this fact in her Complaint, she counters Service Centers' argument by asserting that, even if such a warning appeared on-screen, the discrepancy between the sign warning and the

on-screen warning, both of which are required by statute, nonetheless gives rise to a violation of the EFTA's notice requirements. In support of this proposition, Piontek cites *Burns v. First American Bank*, an unpublished district court decision which held that, for purposes of surviving a motion to dismiss, an allegation of conflicting fee notices is sufficient to allege a violation of the EFTA. *See* No. 04-C-7682, 2005 U.S. Dist. LEXIS 9485, at *14-16 (N.D. Ill. Apr. 28, 2005).

**II.**

In its First Amended Answer and Affirmative Defenses to Amended Class Action Complaint [Paper No. 19], Service Centers asserts some 33 defenses. Of those 33, Piontek takes issue with the following seven:

> EIGHTH DEFENSE: Plaintiff's claims are barred by the doctrine of estoppel, as Plaintiff did not rely upon any conduct by this Defendant in allegedly agreeing to pay the fee.
>
> NINTH DEFENSE: Plaintiff's claims are barred by the doctrine of consent, as Plaintiff did not rely upon any conduct by this Defendant in allegedly agreeing to pay the fee.
>
> TENTH DEFENSE: Plaintiff's claims are barred by the doctrine of ratification, as Plaintiff did not rely upon any conduct by this Defendant in allegedly agreeing to pay the fee.
>
> ELEVENTH DEFENSE: Plaintiff's claims are barred by the voluntary payment doctrine, as Plaintiff did not rely upon any conduct by this Defendant in allegedly agreeing to pay the fee.
>
> TWELFTH DEFENSE: Plaintiff's claims are barred because Plaintiff did not rely on any conduct by this Defendant in allegedly agreeing to pay the fee.
>
> FOURTEENTH DEFENSE: Plaintiff's claims are barred because Plaintiff failed to mitigate her alleged damages, if any, as she proceeded with the transaction despite the fact that a notice that a fee of $1.75 would be charged appeared on the screen of the ATM.
>
> TWENTY-FOURTH DEFENSE: Plaintiff's claims are barred, in whole or in part, because Plaintiff did not rely upon any statements, omissions or conduct of this

Defendant, and any alleged statements and/or omissions were not material in nature.

In her Second Motion to Strike Affirmative Defenses, Piontek argues that these seven defenses violate the elevated plausibility standard announced in *Twombly* and *Iqbal* because they fail to "plausibly suggest" defenses to the EFTA violations Piontek alleges.[1] This is so, Piontek argues, because: (1) the EFTA imposes *strict liability* on ATM operators that fail to comply with the statute's notice requirements; and (2) an operator that violates the notice requirements is therefore liable under the EFTA irrespective of whether the plaintiff relied on the operator's conduct, statements, or omissions, and irrespective of whether the plaintiff failed to mitigate damages by proceeding with a transaction after receiving a second, more accurate on-screen warning.

In its Response in Opposition to Plaintiff's Second Motion to Strike Affirmative Defenses, Service Centers argues that its affirmative defenses are more than sufficient to place Piontek on notice of the facts and circumstances of its defenses, and that Piontek's assertions regarding the supposed "implausibility" of the defenses go to their merits—and not to the question of whether the defenses are sufficiently pled.

**III.**

Pursuant to the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established once the factual content of a complaint "allows the court to draw the

---

[1] In her first Motion to Strike Affirmative Defenses [Paper No. 18], Piontek took issue with nine of Service Centers' asserted defenses. However, after Piontek filed her first Motion, Service Centers filed its amended Answer, which apparently addressed some—though not all—of Piontek's objections. In light of the filing of Service Centers' amended Answer, Piontek's first Motion to Strike Affirmative Defenses is **MOOT**.

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "'across the line from conceivable to plausible.'" *Id.* at 1952 (quoting *Twombly*, 550 U.S. at 570).

Satisfying this "context-specific" test does not require "detailed factual allegations." *Id.* at 1949-50 (quotations omitted). The complaint must, however, plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Id.* at 1950. Without such "heft," *id.* at 1947, the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability," *id.* at 1949, fail to nudge claims "across the line from conceivable to plausible." *Id.* at 1951 (quotations omitted); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 255-56 (4th Cir. 2009).

To date, neither the Supreme Court nor any of the federal Circuit Courts of Appeals has opined as to whether the heightened pleading standard announced in *Twombly* and *Iqbal* applies to affirmative defenses. However, several district courts, including a number in the Fourth Circuit, have addressed the issue, and the majority has determined that *Twombly* and *Iqbal* do indeed govern the pleading of affirmative defenses. *See, e.g.*, *Francisco v. Verizon South, Inc.*, No. 09-cv-737, 2010 U.S. Dist. LEXIS 77083, at *23-24 (E.D. Va. July 29, 2010); *Bradshaw v. Hilco Receivables, LLC*, No. RDB-10-113, 2010 U.S. Dist. LEXIS 75553, at *9 (D. Md. July 27, 2010); *Palmer v. Oakland Farms, Inc.*, No. 10-cv-00029, 2010 U.S. Dist. LEXIS 63265, at *15-17 (W.D. Va. June 24, 2010).

In any event, a "court may strike from a pleading an insufficient defense . . . ." Fed. R. Civ. P. 12(f). "A defense is insufficient 'if it is clearly invalid as a matter of law.'" *Spell v.*

*McDaniel*, 591 F. Supp. 1090, 1112 (E.D.N.C. 1984) (quoting *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976)). When reviewing a motion to strike, "the court must view the pleading under attack in a light most favorable to the pleader." *Clark v. Milam*, 152 F.R.D. 66, 71 (S.D. W. Va. 1993).

The Fourth Circuit has warned that "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quotations omitted). Nevertheless, if a movant can demonstrate that a defense is clearly insufficient, the court should grant the motion to strike. *See Spell*, 591 F. Supp. at 1112. Given the disfavored status of Rule 12(f) motions to strike, however, a defendant is ordinarily given leave to amend the answer. *See, e.g.*, *Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985).

### IV.

Assuming, then, that *Twombly* and *Iqbal* apply to the pleading of affirmative defenses, a defense asserted in an answer will satisfy the elevated plausibility standard announced in those cases if it: (1) contains a brief narrative stating facts sufficient to give the plaintiff "fair notice of what the . . . [defense] is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555; and (2) the facts stated "plausibly suggest," *Iqbal*, 129 S. Ct. at 1951, cognizable defenses under applicable law.

Piontek argues that seven of Service Centers' affirmative defenses violate the *Twombly*/*Iqbal* plausibility standard because the EFTA imposes strict liability and, consequently, any defense asserting an absence of reliance or a failure to mitigate on the part of the plaintiff is implausible on its face. On this point, however, the Court agrees with Service Centers that

whether or not the EFTA imposes strict liability negating defenses in a case involving conflicting fee notices is an unclear question of law that goes to the merits and one that should not be decided by the Court on a motion to strike.

That said, the Court concludes that Service Centers' amended Answer contains a factual narrative that fully suffices to place Piontek on notice of the factual basis for its affirmative defenses of estoppel, consent, ratification, voluntary payment, failure to mitigate, and lack of reliance. Service Centers alleges that Piontek "proceeded with the transaction despite the fact that a notice that a fee of $1.75 would be charged appeared on the screen of the ATM." That simple allegation forms the factual basis of all the various legal theories of defense that Service Centers puts forth.

Insofar as Piontek wishes to probe further, she may do so by way of discovery.

**V.**

For the foregoing reasons, Piontek's Motion to Strike Affirmative Defenses [Paper No. 18] is **MOOT**. Her Second Motion to Strike Affirmative Defenses [Paper No. 20] is **DENIED**.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE**

**November 2, 2010**